Gulf, Colorado & Santa Fe Railway Company v. G. F. Martin.

Decided February 25, 1905.

**1.—Judicial Districts—Constitutional Law.**

The Act of the Twenty-eighth Legislature, approved March 24, 1903, creating the Sixty-second Judicial District of Texas, held constitutional. · Following ruling of the Supreme Court in Railway Co. v. Hall, 98 Texas, 480, 85 S. W. Rep., 786.

**2.—Railroads—Maintaining Depot—Consideration of Deed—Damages.**

Where a railroad company obtained a deed to it of land, the only consideration for which was, as recited in the deed, the increased value of the grantor's property by the establishment of a depot and side-tracks on the land conveyed, the company was required not only to provide a depot building, but to keep an agent there, and for its failure to do so—the maintenance of a station there proving unprofitable—it was responsible to the grantor in damages.

Error from the District Court of Lamar. Tried below before Hon. T. D. Montrose.

*H. D. McDonald* and *J. W. Perry,* for plaintiff in error.—It is our contention that, as a matter of law, the evidence in this case did not authorize a judgment for the plaintiff, and that the court should have given to the jury the peremptory instruction to find for the defendant. There was no plea that anything had been omitted from the deed by fraud, accident or mistake, and hence, all the legal evidence in this case—and legal evidence is the only kind the court would consider—bearing on the contract between the parties is found in plaintiff's deed to the defendant and the terms and meaning of the same are clear and unambiguous. What defendant agreed to do in consideration of the deed was to construct its road and establish a depot and side tracks on the land, and this it did. There was no agreement to keep an agent there at all, yet the company did keep one there most of the time. There was no agreement to maintain a depot at all, nor to keep it in any particular way. That the company did not keep an agent there all the time, or did not keep the depot lighted and heated, or provide all

the facilities for passengers and shippers that are usual in some depots, does not go to show that it failed in any respect to comply with its contract with plaintiff. Railway v. Marshall, 136 U. S., 393; Railway v. Scott, 77 Fed. Rep., 726; Railway v. Birnie, 26 S. W. Rep., 528.

*Hale, Allen & Dohoney,* for defendant in error.

BOOKHOUT, ASSOCIATE JUSTICE.—This was a suit by defendant in error against plaintiff in error for damages to his farm by depreciation in value for alleged failure to keep and maintain a depot at Ambia, Lamar County, Texas, on land conveyed by plaintiff to defendant for that purpose. Plaintiff claimed that the consideration for his deed to the defendant was its agreement to build and maintain a depot on the land "for all time, or as long as said railroad should be operated." Defendant answered by general denial and by special answer setting up that the consideration for plaintiff's deed to it was its agreement to "establish a depot and side tracks on said property," etc., that it did in the year 1887 so establish the same and that the same had ever since been and were now so established on said land, and that it now maintained and had always maintained the same for the receipt and forwarding of freight and the discharge and receipt of passengers, and that it had fully complied with its agreement with plaintiff.

The cause was tried before a jury and they rendered a verdict for plaintiff for $650, on which judgment was entered. Defendant brings the case to this court by writ of error duly perfected, and has filed its assignments of error.

This cause was submitted to us on the — day of January, 1905. Upon an examination of the briefs for plaintiff in error we found that the question of the constitutionality of the Act creating the court in which the case was tried was raised. It was not raised by an assignment of error, but it was suggested in briefs as fundamental error. We were inclined, upon examination, to the opinion that there was merit in the suggestion, and of our own motion set the submission aside and referred the question back to counsel for argument. Argument by both sides having been filed, the case was again submitted.

The Act referred to is known as chapter 55, General Laws of the Twenty-eighth Legislature, approved March 24, 1903, and is entitled "An Act to create the Sixty-second Judicial District of Texas; to name the counties composing said district; to prescribe the time of holding the terms of the District Court in said district; empowering the judge of the Sixth Judicial District to empanel the grand jury for Lamar County, and empowering the judge of the Eighth Judicial District to empanel the grand jury for Hunt and Delta Counties, and giving authority to the judges of either the Sixth or Sixty-second Judicial District in the county of Lamar, to transfer cases from their respective courts to the other of said courts, and giving authority to the judges of either the Eighth or Sixty-second Judicial District in the counties of Hunt and Delta, to transfer cases from their respective courts in each of said counties to the other of said courts; and to provide for the appointment of a district judge for the Sixty-second Judicial District of Texas, and declaring an emergency."

The statute creates the Sixty-second Judicial District of Texas, and provides that the district is to be composed of the counties of Hunt, Delta and Lamar, and provides for the holding of but one term of court in Delta County. By the terms of article 5, section 7, of the Constitution, it is provided that "he (the district judge) shall hold the regular terms of his court at the county seat of each county in his district at least twice in each year in such manner as may be prescribed by law." Here is an express requirement that at least two terms of the District Court shall be held in each county in his district each year. It is clear that the statute providing for only one term in a county of the district is not a compliance with such requirement. In this respect the statute violates the Constitution.

Our Supreme Court held that a statute which created a District Court and providing that it should hold its terms at a place other than the county seat violated this clause of the Constitution and was void. (Whitener v. Belknap & Co., 89 Texas, 273.)

The provision requiring that a district judge shall hold at least two terms of his court each year in each county is equally as emphatic and mandatory as that such court shall be held at the county seat.

The next question is: Did the Legislature have the power to create a District Court with powers less than those conferred upon District Courts by the Constitution? The Act creates a District Court and prohibits said court, while sitting in Delta County, from impanelling a grand jury, or taking cognizance or jurisdiction of any criminal matter, except a writ of habeas corpus; and from summoning or having summoned, impanelling or having impanelled, any jury in said court. This Act attempts to create a District Court, and in passing upon its constitutionality we must look to those provisions of the Constitution which authorize the creation of District Courts and specify their powers. (Whitener v. Belknap & Co., supra.)

By section 8, article 5, of the Constitution, it is provided that District Courts shall have original jurisdiction in all criminal cases of the grade of felony. They have jurisdiction in all suits without regard to any distinction between law and equity, where the matter in controversy shall be valued at or amount to $500, exclusive of interest. By other provisions they are made courts of general jurisdiction.

The Constitution, then, provides that District Courts shall have original jurisdiction to try certain named civil cases and all civil cases wherein the amount is of a certain value, and by section 5, article 10, that either the plaintiff or defendant, upon application made in open court, shall have the right of trial by jury. Again, it is provided by article 1, section 15, that the right of trial by jury shall remain inviolate, and the Legislature is only given authority to pass laws to regulate the same, and to maintain its purity and efficiency. It is provided by article 3, section 56, that the Legislature shall not pass any local or special law regulating the practice or jurisdiction of, or changing the rules of evidence in, any judicial proceeding, or inquiry, before courts; and, again, in the same section it is provided that the Legislature shall not pass any local or special law affecting the summoning or impanelling of grand or petit juries. These declarations from the Constitution make it clear that District Courts are given power

to impanel juries, and that upon application therefor and complying with the law in other respects, the parties have a right to a jury trial in each District Court.

By this Act the Legislature undertook in civil cases to deny to litigants the right of trial by jury in the Sixty-second Judicial District Court in Delta County, and thereby undertook to require all litigants to try their cases before the court, or suffer the penalty of having them transferred to the court for the Eighth Judicial District. They undertook to deny to that court the right to hear and determine criminal cases. In other words, the Legislature undertook by this Act to destroy all the jurisdiction conferred by the Constitution upon District Courts, except to issue the writ of habeas corpus and hear and determine non-jury civil cases.

Chief Justice Roberts, in Ex parte Towles, 48 Texas, 439, in passing upon a kindred question, used the following language: "It was the object of the framers of the Constitution to mark out a complete judicial system defining generally the province of each of the courts by reference to the objects confided to the action of each and the relation of each to the other. To that extent it must be held permanent and not subject to the action of the Legislature, except as a change may have been provided for by the Constitution itself."

A jurisdiction vested in courts by the Constitution is inalienable on the part of the courts themselves, nor can it be divested by the Legislature, except in the mode and under such exceptions as may be prescribed by the Constitution itself. Ex parte Ginnochio, 18 S. W. Rep., 82. The Legislature has no authority, by statutory enactment or otherwise, to alter, abridge or construe any part or clause of the Constitution, excepting when there is express authority so to do. (Davis v. Davis, 34 Texas, 24.) And it is held that the jurisdiction conferred by the Constitution upon District Courts can not be restricted or limited by the Legislature. (Thomas v. Hill, 3 Texas, 271.)

Under the facts of this case these decisions lose none of their force by reason of having been rendered prior to the constitutional amendment of 1891, authorizing the Legislature "to establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and conform the jurisdiction of the District and other inferior courts thereto."

We think it clear that said Act, insofar as its provisions relate to Delta County, violates the Constitution in prohibiting the court from taking cognizance of any criminal matter, except the writ of habeas corpus; and in prohibiting the court from summoning or impanelling a jury or trying any jury case.

The question that now presents itself, is: Can the Act insofar as it relates to Hunt and Lamar Counties stand independent of the provisions relating to Delta County?

The Act should be construed as a whole, and if, in so construing it, a portion is found obnoxious to the Constitution, then it becomes the duty of the court to ascertain the intention of the Legislature in passing the Act, and determine from the entire Act whether the portion not repugnant to the Constitution would have been enacted apart from the obnoxious portion. What was the purpose of the Legislature in

passing this Act? We answer to create an additional judicial district. It does not create a new judicial district for Hunt County, or Lamar County, or Delta County, but the Act creates a District Court for all three of the counties as a whole, and at specified times the judge thereof is required to exercise the functions of his office in open court in each of these counties. By the second section a judge is to be appointed, not to be a district judge for any particular county, but for the Sixty-second Judicial District. If the purpose of an Act is to accomplish a single object only, and some of its provisions are void, the whole must fall, unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other as conditions, consideration or compensations for each other as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect the Legislature would not pass the residue independently, then, if some portions are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them. (Cooley on Const. Lim. (7th ed.), p. 248.)

The Legislature in framing the Act under discussion had but a single object in view as stated in its caption, "Creating the Sixty-second Judicial District and fixing the time of holding courts therein." This was the controlling object of the Legislature. The other matters provided for in the Act are merely incidents to this main purpose. We can not say that it is apparent that the Legislature would have passed the Act, except as a whole and with Delta County included in the district. This is one of the tests to be applied when the statute is unconstitutional in part, to determine whether the whole Act must for this reason fall. (Railway v. Mahaffey, 11 Texas Ct. Rep., 858.) 

If Delta County were eliminated, the district would be composed of counties not contiguous. While there is no constitutional prohibition that the Legislature shall not create judicial districts out of territory not contiguous, such has been the settled policy in this State. It follows, from these remarks that in our opinion the entire Act is void.

The judgment from which this writ of error is prosecuted having been rendered by a court attempted to be created by an unconstitutional Act, amounts to no judgment, is *coram non judice* and void. The judgment is therefore reversed and the cause dismissed.

### OPINION ON REHEARING.

The motion for rehearing in this case was held up by us to await the decision of the Supreme Court upon the question of the constitutionality of the Act creating the Sixty-second Judicial District Court, it having been suggested to us that this question was pending in that court. On the 16th of March, that court handed down an opinion in which a different conclusion is reached than that reached by this court. The Supreme Court holds that the Act is constitutional in all respects. (Railway Company v. Hall, 98 Texas, 480, 12 Texas Ct. Rep., 377.) This holding requires that the motion for rehearing be granted.

We proceed to consider the several matters complained of in the brief, which it is alleged constitute error in the trial of the cause.

It is contended that the trial court erred in refusing to give defendant's special charge instructing a verdict for the railway company. The appellee, G. F. Martin, was the owner of a farm in Lamar County and lived thereon. In 1886, the defendant, Gulf, Colorado & Santa Fe Railway Company, constructed its railroad through said farm. It was represented to Martin by the appellant's agent, representing it in procuring its right of way and depot grounds, that it would increase the value of his land to have a depot on his farm. Martin, believing that the establishment of a depot on his land would enhance its value and be an accommodation to him, agreed to convey and did convey to the railway company between eight and nine acres of land, worth fifty dollars per acre, for the establishment of a depot. The deed is dated the 28th of February, 1887 and the consideration is stated therein as follows: "For and in consideration of the increased value of our property by the construction of the Gulf, Colorado & Santa Fe Railway and the establishment of a depot and side track upon the property hereinafter described, which is deeded to said company for said purposes, have granted, sold," etc.

Martin testified that the only consideration for the deed was the promise of the company to build a depot there and keep it open. A depot was established on the land described in the deed in February, 1887, called Ambia, and for three years thereafter the company kept an agent and telegraph operator at said depot. From that time up to 1902 the company kept an agent there during the cotton season, but not a telegraph operator. Since 1902 it has not kept an agent at said depot. It was shown that the depot is kept closed. No provision is made for taking care of freight that is to be shipped out or in. The doors of the freight room are left open and there is no one there to receive the freight. Passenger trains stop there, but you can not buy a ticket there. You can only arrange for shipment of freight when the conductor of the local train is there. The agent was withdrawn from Ambia because the business did not justify the keeping of an agent at Ambia. A competent man to act as agent would cost forty dollars per month.

Appellant contends, as we understand it, that it fully performed its contract by the erection of the depot and side tracks upon the land and by the keeping of a depot agent at Ambia from 1887 to 1902, and the business at Ambia having become unprofitable, it was justified in withdrawing its agent. This might furnish an answer to a suit in equity against appellant for a specific performance of the contract. Such was the case of Railway Company v. Marshall, 136 U. S., 393. In that case Justice Miller, who delivered the opinion of the court, clearly intimates on pages 405 and 406 of the opinion, that it would not furnish a defense to a suit at law for damages.

This is not a suit for specific performance, but a suit at law to recover damages because of appellant's failure to keep and maintain a depot at Ambia. The evidence shows that the sole consideration for the making of the deed was the anticipated increase in the value of plaintiff's land by the establishment of a depot and side tracks

thereon. Can it be said that this consideration was performed by the construction of a depot and side tracks? Did not the parties to the deed and contract contemplate by the "establishment of a depot" on the property that such depot would be maintained and kept open for business? It is not shown, and it does not appear, that the construction of the depot and side tracks alone would increase the value of plaintiff's land. The parties must have meant more than this.

We think it proper in construing the contract to take into consideration the provisions of the statute relating to the establishment and maintenance of railroad depots. (Rev. Stats., arts. 4492, 4493, 4519.) Article 4521 was adopted since the execution of the deed, but may be looked to as showing what is meant by maintaining a depot for passengers. Construing the recitations in the deed in the light of the facts surrounding the parties at the time of the transaction we are of the opinion that by the use of the words, "the establishment of a depot and side tracks upon the property," the parties meant that such depot should be maintained and kept open for business. Such being the construction of the contract, the railway company, by failing to maintain and keep said depot open for business, became liable to plaintiff for the damages sustained by him by reason of such failure. (Railway Co. v. Jones, 82 Texas, 156; Railway Co. v. Doss, 36 S. W. Rep., 497; Levy v. Tatum, 43 S. W. Rep., 942.)

The trial court did not err in so instructing the jury. Nor was there error in refusing the special charge instructing a verdict for defendant. No objection is made as to the amount of the recovery, the sole contention being that plaintiff is not entitled to recovery at all under the facts. We conclude that there is no error in the judgment and the same is affirmed.

*Affirmed.*

Writ of error refused.