## TUBBE v. SAMPLE.

No. 2502.

Court of Civil Appeals of Texas. Beaumont.

July 7, 1933.

Rehearing Denied July 19, 1933.

Adams & McAlister, of Nacogdoches, for appellant.

Seale & Thompson, of Nacogdoches, for appellee.

COMBS, Justice.

On February 28, 1931, Joe P. Clevenger and others, being the owners of several tracts of land in Nacogdoches county, aggregating about 3,000 acres, filed a petition with the commissioners' court requesting that the lands be added to a hog law district, alleging that said lands were adjacent to and adjoining a subdivision of said county which was under the hog law. The subdivision referred to is designated in the record as the Mount Horeb Hog Law district. On April 14, 1931, the commissioners' court entered an order adding said territory to the hog law district. The appellee, Will D. Sample, lives on one of the tracts of land belonging to Joe P. Clevenger within the added area. Just prior to the filing of this suit

appellee, Sample, took up and impounded certain hogs belonging to appellant and this suit was filed by appellant, as plaintiff, in the district court of Nacogdoches county, seeking a mandatory injunction compelling appellee to release his hogs and also restraining him from taking up or interfering with his hogs on the range in that territory in the future. A temporary injunction was prayed for, and on May 4, 1933, the same was granted by the district judge. On May 20, 1933, after a hearing, the temporary injunction was dissolved on the motion of appellee, and this appeal is from the order dissolving the temporary injunction.

This case turns upon the question of whether or not the territory added to the Mount Horeb Hog Law district, including the Clevenger tract, where appellee lives and where the hogs were taken up, was legally added to the hog law district.

Article 6931, R. S. 1925, is as follows: "Whenever there is territory between two subdivisions of a county which have adopted a stock law, or when there is territory adjoining a subdivision which has adopted a stock law, and in such territory there are less than fifty freeholders, an election shall be ordered on a petition of a majority of the freeholders residing in such territory; and the election shall be held as provided by law in other cases relating to the adoption of the stock law. If there be less than twenty freeholders in such intervening or adjoining territory, then on the petition of a majority of the owners of the land to the commissioners court, the said commissioners court shall issue an order extending the stock law to said territory and the same shall be included in the territory of such adjoining subdivision; in cases where there are no freeholders on such intervening or adjoining territory, then on the petition of the owner or owners of the land to the commissioners court, the said court shall issue an order extending the stock law to said territory, and the same shall be included in the territory of such adjoining subdivision; *and any person or persons who own lands adjoining any other lands which have been added to territory in which a stock law prevails, shall have the same right, and, on petition of the owner or owners of such lands to the said court, the said court shall issue an order extending the stock law to said territory, and the same shall be included in the territory of such adjoining subdivision.*" For convenience, we have italicized the portion of the article with which we are chiefly concerned in this discussion. None of the land in the added 3,000 acres touched or adjoined the Mount Horeb Hog Law district as it originally existed. However, some time before the petition of Clevenger and others was presented to the commissioners' court, two tracts of land belonging to B.

C. Castleberry and Charles White, and which lands did join the district, were added to it by petition. Two of Clevenger's tracts adjoined the Castleberry and White tracts, but the tract upon which appellee, Sample, lived was another tract belonging to Clevenger, which lay some distance east and separated from the first two tracts mentioned by other lands; all, however, being within the 3,000 acres added to the Mount Horeb Stock Law district by order of the commissioners' court above referred to.

■ Appellant contends, first, that the tract of land upon which appellee lives could not be joined onto the stock law district by petition of its owner, as was attempted, because it did not *adjoin* any other lands which had been added to the hog law district. This contention is overruled. It will be noted that the italicized portion of the article of the statute above quoted provides, in substance, that any "person or persons" who own lands adjoining any other lands which have been added to territory in which a stock law prevails shall have the right to have their lands included in the stock law district upon petition of the "owner or owners," and that upon the presentation of such petition the court shall issue an order extending the stock law to said "territory." While it is true that the tract upon which appellee lives did not adjoin the hog law district at the time it was added to it, nevertheless it was part of the *territory* comprising the 3,000 acres which was added, and this territory comprised a block of contiguous and abutting lands, which territory did adjoin the district. We think the statute, when properly construed, means that any defined territory which adjoins a stock law district may be added to such district upon petition of the owner or owners of such lands in the manner shown to have been done in this case, irrespective of whether or not all the individual tracts which make up the territory adjoin the stock law district. In requiring the attached lands to be adjacent to the district or subdivision to which they are added for stock law purposes, it was the evident intent of the Legislature to prevent the attaching of segregated tracts or territory not actually connected with the stock law district, thus insuring that such district shall at all times be a single, well-defined subdivision.

■ Included in the 3,000 acres added to the Mount Horeb Stock Law district, as above mentioned, was a tract of 491 acres owned by the E. A. Blount estate, and a tract of 863 acres owned by John Schmidt. The petition on which the commissioners' court acted in adding the territory is signed, in so far as the Blount and Schmidt lands are concerned, as follows: "Mrs. E. A. Blount, by J. W. Bird, Jr.," and, "John Schmidt, per C. C. Rhein (Atty. in fact)."

The Blount and Schmidt tracts lie between the tract occupied by appellee and the two Clevenger tracts, which joined the hog law district. Thus, if the Blount estate and Schmidt tracts were not properly included in the added territory, then the tract occupied by appellee is not connected with or adjoining the stock law district, and as a matter of law, as we construe the statute, could not form a part of it. It is appellant's contention in this connection that since the owners of the Blount and Schmidt tracts did not sign the petition, and there is no showing in the evidence that the purported agent and the attorney in fact were what they purported to be and clothed with authority to bind their respective principals, that the commissioners' court was without authority to include their lands in the territory added to the stock law district. We think it is a sufficient answer to this contention to say that appellant is in no position to raise that question in this proceeding. We have no doubt that a properly authorized agent or attorney in fact may act for an owner of land in the execution of a petition requesting the inclusion of the land in a stock law district. There is nothing in the statute forbidding it, either directly or by implication, and ordinarily an owner of land may do anything with reference to the management and control of his land through an agent that he can do personally, even to the alienation of the title of it. The record then does not show affirmatively that the commissioners' court was without authority to add the Blount and Schmidt lands to the stock law district. The order of the commissioners' court is regular on its face, and on collateral attack it will be conclusively presumed that every fact necessary for the court to find as a prerequisite to its power to act was found by it in support of the order which it made. This, of course, includes a finding that the petition was properly executed on behalf of the owners of the land.

The 3,000 acres added to the Mount Horeb Hog Law district is part of approximately 14,000 acres lying between and bounded by three hog law subdivisions and the Angelina river. Within that territory there were thirty freeholders. No stock law election has ever been held in that territory.

Appellant contends that since more than twenty freeholders live within that territory, a portion of it cannot be added to an adjacent hog law district merely by petition of the owners, as has been done in this case. His contention seems to be that under the statute the territory comprising the 14,000 acres must be dealt with as a unit in adding it to a hog law district. This contention is overruled. There is nothing in the statute which indicates that the Legislature intended to require that a territory so situated would have to be treated as a unit in coming under the stock law. To be sure, the freeholders within that territory might have acted together and dealt with it as a unit. But the statute also clearly provides that any owner or owners of lands adjoining other lands which have been added to a stock law district may have such lands included by petition presented to the commissioners' court, and there is nothing in the former provision with reference to the whole area which precludes the right of the owners of such adjacent lands to proceed by petition to have their lands attached to a stock law district to which they are adjacent.

Within the 3,000 acres is a tract of 114 acres owned by a Mrs. Scheptine. Upon the hearing it was agreed that Mrs. Scheptine did not sign the petition to the commissioners' court. Appellant contends that this renders the order of the commissioners' court invalid as to all the added territory. Whether the tract of Mrs. Scheptine is legally within the hog law territory or not is not necessary for us to determine. Under the statute it is the right of each individual owner of a tract of land which adjoins a stock law subdivision to have his land added to the subdivision upon petition presented by him to the commissioners' court. Mrs. Scheptine's tract lies on the edge of the added area fartherest removed from the stock law district, and, even if her tract was not properly included, the other tracts form one territory which does join the hog law district. The petition and the order of the commissioners' court set forth very clearly each tract of land in the added territory, and even if Mrs. Scheptine's tract be excluded, the territory remaining, including the land where appellee lives, constitutes a well-defined area adjoining the stock law district. The legality of the addition of that territory, including appellee's premises, to the district does not depend in any respect on the question of whether Mrs. Scheptine's tract was properly included.

As said by Judge Pleasants, in Stokes v. Winfree, 23 Tex. Civ. App. 690, 57 S. W. 918: "The general policy of the legislature, as shown in all of the statutes upon the subject, has been favorable to the adoption and extension of the stock law in order that the agricultural interests of the state may be relieved of the expense of fencing against the depredations of stock." In keeping with the Legislative intent, as well as with sound public policy, we think the statutes should be liberally construed in favor of the legality of stock law districts when it appears that the law authorizing their formation has been substantially complied with.

Finding no error, the judgment of the trial court dissolving the temporary injunction is in all things affirmed.